UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISOURI
EASTERN DIVISION

| | | |
|---|---|---|
| JANE DOE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:21-cv-01130-AGF |
| | ) | |
| KIRKWOOD R-7 SCHOOL DISTRICT, | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM AND ORDER**

This matter is before the Court on Defendant Kirkwood R-7 School District's ("KSD") Motion to Quash and/or Motion for Protective Order.  ECF No. 47.  Plaintiff timely filed her Response.  ECF No. 50.  KSD filed its Reply.  ECF No. 55.  Plaintiff then requested an opportunity to file additional briefing to respond to some matters that were first raised in KSD's Reply.  ECF No. 58.  The Court granted Plaintiff's motion (ECF No. 59), and Plaintiff filed its Sur-Reply (ECF No. 60).  This matter is now fully briefed and ripe for disposition.  For the reasons explained below, the Court will grant KSD's motion in part and deny it in part.

### **Background**

#### A.    Plaintiff's Complaint

Plaintiff first filed this case in the Circuit Court of St. Louis County on July 16, 2021, raising claims against KSD and Defendant John "Jack" Collier related to sexual abuse allegedly perpetrated by Defendant Collier against Plaintiff while she was a student at Kirkwood High School in the 1980–81 school year.  ECF No. 4.  Plaintiff raised claims

against Mr. Collier for sexual assault and violations of her Fourth and Fourteenth Amendment rights under 42 U.S.C. § 1983.  Against KSD, Plaintiff raised a claim for violation of her constitution rights under § 1983 and a claim for violation of Title IX.  On September 16, 2021, Defendant KSD removed the case to this Court based on federal question jurisdiction under 28 U.S.C. § 1331.  ECF No. 1.

Following removal, Plaintiff filed an unopposed motion to amend her Petition to remove Mr. Collier as Defendant because he is deceased.  ECF No. 39.  The Court granted Plaintiff's motion.  ECF No. 41.  Plaintiff subsequently filed her First Amended Complaint, which maintains two claims against KSD: Count I for violation of Title IX and Count II for violation of 42 U.S.C. § 1983.

B.     Relevant Facts

The following facts are taken from the Parties' briefing and attached exhibits.

In or around July 2020, KSD became aware of posts made by KSD alumni on social media platforms alleging instances of sexual abuse of KSD students by KSD staff. Several of these posts alleged that KSD employees were aware of the allegations of sexual abuse but did not take appropriate action.

In response to these allegations on social media, on or around July 14, 2020, KSD issued a request for proposals ("RFP").  The RFP directed interested organizations to submit proposals to conduct an independent assessment and investigation of KSD's culture and climate related to the reporting and handling of allegations of sexual abuse, sexual misconduct, and inappropriate behavior.  The RFP's Project Overview provides the following description of the purpose of the investigation:

2

[KSD is] seeking to better understand:

- The forces that are currently shaping the district and school culture and climate at KSD around [reporting and handling of allegations of sexual abuse, misconduct, and inappropriate behavior].
- Students, staff, and parent experiences or perceptions that are currently affecting the school district's culture and climate, that may be hindering reporting, or undermining confidence that there have been timely and appropriate responses and interventions.
- An assessment of the impact of current district and school culture and climate on students, staff, and families.
- Best Practices to receive and address student, parent, and teacher concerns; support students, parents, and teachers who have been negatively impacted; and to be a leader in positive school culture.

ECF No. 50-1 at 62. The RFP also provides a description of the investigation's goals:

The overarching goals of the this project are to identify and investigate whether there have been previously unreported incidents or failures to take prompt and appropriate action in response to complaints, whether students, staff and parents have confidence in reporting and know to whom and how they may do so; whether there has been appropriate follow-through in terms of consequences and supports when complaints are substantiated, and then, equally important, to identify, conduct trainings on, and help implement strategies to promote a positive school climate and culture that includes but is not limited to:

- Opportunities to grow/expand students, staff, and parent experiences or opportunities that are positively affecting the culture and climate of our district/schools.
- Immediate, short, and long-term interventions to bolster the district/schools' climate and culture.
- Amending policies and practices and/or adding new policies and practices to better address the issues raised.
- Revising how the district/schools communicates and/or enforces policies and practices that promote positive school culture and climate.

*Id.* The RFP states that deliverables may include:

- Research via surveys, focus groups, and/or interviews (internal and external)
- Facilitation of private and public forums (internal and external)

3

- Facilitation of private meetings between individuals (internal and external)
- Investigation of complaints, reporting of incidents, and actions taken
- A written report on official findings . . .
- Presentation(s) to school staff, district staff, and the Kirkwood Board of Education . . .

*Id.* at 62–63.

One of the several firms to submit proposals to KSD was Encompass Resolution, LLC.  Encompass is an investigative firm solely owned by attorney Ann Molloy.  Encompass submitted its proposal to KSD on August 4, 2020.  ECF No. 50-1 at 139.  On August 12, 2020, KSD invited Encompass to interview for the project.  *Id.* at 240.  After the interview, KSD requested that Encompass answer some additional questions.  *Id.* at 388.  In its response, Encompass stated that "[e]ach [Encompass] team member on this project is willing to sign a non-disclosure agreement and understands the obligation to report any suspected crimes we may become aware of during this process to law enforcement directly."  *Id.* at 397.

In September 2020, after conducting several interviews with firms seeking to conduct the investigation, KSD retained Encompass.  Encompass was tasked with conducting a comprehensive review of past allegations of sexual abuse or misconduct at KSD.  Encompass was also to advise KSD as to the sufficiency of its investigations into past allegations.  Encompass was granted access to confidential personnel files of thirty (30) staff members who had been previously accused of engaging in inappropriate conduct with students.  As part of its investigation, Encompass interviewed former KSD employees, third-party witnesses, and alleged victims.

4

After concluding its investigation and review, Encompass produced its "Independent Assessment & Investigation of Culture and Climate" (the "Report").  In June 2021, Encompass presented a final version of its Report in a closed executive session of KSD's Board of Education.  Appended to the Report was Attachment A, a supplemental report on Encompass' review of the personnel files of employees previously accused of sexual misconduct.  Attachment A included Encompass' analysis of the personnel files, an analysis of KSD's investigation into the allegations, and summaries of interviews with individuals associated with the allegations.  KSD later publicly released the Report,[1] but has never made Attachment A public.

After Plaintiff filed her initial Petition in 2021, the Parties conducted discovery. On June 2, 2022, in response to one of Plaintiff's requests for production, KSD produced a privilege log asserting that both the attorney-client privilege and the work product doctrine shielded a twenty-page document identified simply as "Report Attachment." ECF No. 48-2.  KSD's privilege log identified the author of the document as "Encompass Resolution (Independent Legal Counsel Hired by KSD)."

On October 3, 2023, Plaintiff issued a third-party subpoena to Encompass under Fed. R. Civ. P. 45.  ECF No. 48-3.  The subpoena commanded Encompass to produce the following materials:

1.     Any and all documents related to Encompass Resolution's independent assessment and investigation . . . of [KSD].

2.     Any and all witness statements obtained during the course of the

---

[1]     As of December, 2023, the Report is accessible on the KSD website at https://www.kirkwoodschools.org/Page/9975.

investigation;

3.     Any and all documents obtained from [KSD] during the course of the investigation;

4.     Any and all documents related to alleged sexual harassment, sexual discrimination, sexual abuse, and/or sexual misconduct obtained as a result of the investigation;

5.     Any and all documents related to [KSD]'s Title IX, sexual discrimination, sexual abuse, sexual misconduct, and/or sexual harassment policies obtained during the investigation;

6.     Any and all documents that mention and/or reference David Shapleigh;

7.     Any and all documents that mention and/or reference Carol Hotze Hermann;

8.     Any and all documents related to complaints of alleged misconduct committed by David Shapleigh;

9.     Any and all reports (including drafts) written by Encompass Resolution employees regarding the investigation;

10.    Any and all correspondence with [KSD] employees, past and present, regarding the investigation;

11.    Any and all correspondence with attorneys for [KSD];

12.    Any and all correspondence with alleged victims of sexual abuse/harassment/discrimination at [KSD];

13.    Any and all emails related to the investigation;

14.    Any and all proposals to [KSD] regarding the investigation;

15.    Any and all contracts between Encompass Resolution and [KSD] for the investigation;

16.    Any and all pictures obtained during the investigation;

17.    Any and all videos obtained during the investigation;

18.    Any and all recordings obtained during the investigation;

19.     Any and all documents detailing Encompass Resolution's findings in the investigation.

ECF No. 48-3.

On October 17, 2023, KSD filed the instant motion seeking to have the Court quash the Plaintiff's subpoena or to otherwise issue a protective order prohibiting disclosure of privileged and private information requested therein.  ECF No. 47. Attached to KSD's memorandum in support of its motion is the Affidavit of Dr. David Ulrich, dated October 12, 2023.  ECF No. 48-1.  Dr. Ulrich is KSD's Superintendent. The Ulrich Affidavit states that "one aim [of the independent assessment] was to receive confidential legal advice and recommendations regarding the sufficiency of KSD's policies and procedures for the reporting and investigation of sexual abuse allegations in order to ensure that KSD's policies conformed to the law and best practices."  *Id.* at ¶ 7. The Affidavit also states that Encompass was chosen, in part, "because it was a firm with extensive experience in school sexual abuse cases and would be able to provide KSD with frank advice regarding its compliance with the law."  *Id.* at ¶ 8.  The Affidavit also states that "KSD considers its communications with Encompass to have been made in the context of an attorney-client relationship and considers the materials prepared by Encompass in the course of its investigation to constitute KSD's work product."  *Id.* at ¶ 17.  KSD has not provided the documents it wishes to shield from the subpoena for in camera review, nor has KSD submitted its retention agreement with Encompass in support of its motion.

In its Reply, KSD attached emails from Plaintiff's attorney from August 28, 2020,

and October 15, 2020, which allegedly constitute the first instances of Plaintiff's attorney

contacting KSD about potential litigation.  *See* ECF Nos. 55-2 and 55-4.  KSD argues

that these emails are evidence that Encompass' Report and all of the accompanying work

done by Encompass was done in anticipation of litigation and therefore is protected from

disclosure via the work product doctrine.

In response, Plaintiff attached the September 19, 2023, deposition testimony of Dr.

Ulrich to her Sur-Reply.  ECF No. 60-1.  In his deposition, Dr. Ulrich acknowledged that

the RFP did not specifically require entities submitting proposals to be a law firm or to

include attorneys.  *Id.* at 32:8–12.  When asked directly why KSD selected Encompass

over the other potential candidate firms, Dr. Ulrich responded that "Encompass

Resolution was picked, if I recall correctly, because of their background in having

conducted investigations of this sort previously."  *Id.* at 33:10–13.

### Legal Standards

A.     The Limits of Discovery

Federal Rule of Civil Procedure 45(d)(3) provides, in relevant part that, upon a

timely filed motion to quash, the Court "must quash or modify a subpoena that: . . . (iii)

requires disclosure of privileged or other protected matter, if no exception or waiver

applies; or (iv) subjects a person to undue burden."  Similarly, Federal Rule of Civil

Procedure 26(b)(1) permits discovery of "any nonprivileged matter that is relevant to any

party's claim or defense and proportional to the needs of the case. . . ."  "Information

within this scope of discovery need not be admissible in evidence to be discoverable."

*Id.*  "The scope of discovery under Rule 26(b) is extremely broad."  *SI03, Inc. v.*

*Musclegen Rsch., Inc.*, No. 1:16-CV-274, 2020 WL 6544261, at *1 (E.D. Mo. Nov. 6, 2020) (citing *Gowan v. Mid Century Ins. Co.*, 309 F.R.D. 503, 508 (D.S.D. 2015)).  Even so, Rule 26 "vests the district court with discretion to limit discovery if it determines, inter alia, the burden or expense of the proposed discovery outweighs its likely benefit." *Roberts v. Shawnee Mission Ford, Inc.*, 352 F.3d 358, 361 (8th Cir. 2003).

When a proponent of discovery makes a threshold showing of relevance, the party opposing a motion to compel has the burden of showing that its objections are valid by providing specific explanations or factual support as to how each discovery request is improper.  *Bell v. Lombardi*, 4:14-cv-00027, 2015 WL 402084, at *1 (E.D. Mo. Jan. 28, 2015) (citing *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1993)).  "Bare assertions that the discovery requested is overly broad, unduly burdensome, oppressive, or irrelevant are ordinarily insufficient to bar production." *Id.* (citation omitted).

B.    Attorney-Client Privilege and the Work Product Doctrine

When a case is before the Court based on federal subject matter jurisdiction, the federal law of privilege applies.  *Harvey v. Great Circle*, No. 4:19-CV-902, 2020 WL 6544237, at *2 (E.D. Mo. Nov. 6, 2020) (citing Fed. R. Evid. 501 advisory committee's note to 1974 enactment).  "The attorney-client privilege affords a client the right to refuse to disclose 'communications between attorney and client made for the purpose of obtaining legal advice.'"  *Care v. Anheuser-Busch Cos.*, 791 F. Supp. 2d 672, 674 (E.D. Mo. 2011) (quoting *In re United States*, 590 F.3d 1305, 1309 (Fed. Cir. 2009)).  The attorney-client privilege applies where "the parties to the communication in question . . . bear the relationship of attorney and client." *Diversified Indus., Inc. v. Meredith*, 572

F.2d 596, 602 (8th Cir. 1977).  "Moreover, the attorney must have been engaged or consulted by the client for the purpose of obtaining legal services or advice services or advice that a lawyer may perform or give in his capacity as a lawyer, not in some other capacity."  *Id.*  "A communication is not privileged simply because it is made by or to a personal who happens to be a lawyer."  *Jo Ann Howard & Assocs., P.C. v. Cassity*, No. 4:09CV01252, 2012 WL 2396423, at *3 (E.D. Mo. June 25, 2012) (citing *Diversified Indus.*, 572 F.2d at 602).  The party seeking to assert the attorney-client privilege to shield materials from discovery has the burden of showing that the privilege applies.  *See Hollins v. Powell*, 773 F.2d 191, 196 (8th Cir. 1985) (citing *Diversified Indus.*, 572 F.2d at 609).

The work product privilege has been codified by Federal Rule of Civil Procedure 26(b)(3): "Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative . . . ."  If discovery of such materials is permitted, Rule 26(b)(3)(B) protects against "disclosure of mental impressions, conclusions, opinions, or legal theories of a party's attorney . . . ."  "The work product privilege's primary purpose is to [ensure] that the representation provided by an attorney to a client is not inhibited by fear that his files will be subject to scrutiny upon demand by an opposing party."  *Muldrow v. City of St. Louis*, No. 4:18-CV-02150, 2019 WL 5597057, at *3 (quoting *Cassity*, 2012 WL 2396423, at *3).  "The test for determining if the materials assembled were prepared in anticipation of ligation is whether, in light of the nature of the documents and the factual situation in the particular case, the document can fairly be said to have been

10

prepared or obtained because of the prospect of litigation." *Id.* (internal quotation marks and citation omitted).

### Discussion

KSD argues that the subpoena directed towards Encompass must be quashed because (1) it requests information not relevant to Plaintiff's case and is therefore overbroad; (2) the documents sought by the subpoena are protected from disclosure by the attorney-client privilege and/or work product doctrines because they were prepared by Ms. Molloy of Encompass, who was then acting as KSD's attorney and prepared the materials in anticipation of litigation; (3) disclosure of the requested documents and information would violate the privacy interests of non-parties.  In the alternative, KSD argues that the Court should issue a protective order preventing the discovery of the requested information for the same reasons.  ECF No. 48.

Plaintiff argues that (1) the subpoena is not overbroad and seeks information relevant to support Plaintiff's claim, specifically as the information relates to Plaintiff's allegations of KSD's "custom" of allowing employees to sexually abuse and prey on students; (2) the requested materials are not protected from disclosure by the attorney-client privilege or the work product doctrine because Ms. Molloy was not acting as KSD's attorney and the documents requested were not prepared in anticipation of litigation; and (3) Plaintiff is willing to receive the materials under a protective order to ensure there is no violation of the privacy of third parties discussed therein.  ECF No. 50. The Court will address each of these issues in turn.

11

A.      Overbreadth and Relevance

KSD contends that the subpoena is overbroad because it seeks information about allegations of sexual misconduct by KSD employees that are unrelated to Plaintiff's specific allegations regarding Mr. Collier.  KSD cites to *P.H. v. Sch. Dist. of K.C.*, 265 F.3d 653, 658–59 (8th Cir. 2001) for the contention that, to prevail on her § 1983 claim, Plaintiff must prove: "(1) a continuing, widespread, persistent pattern of *misconduct by the government employee*; (2) deliberate indifference to or tacit authorization of the conduct by the policy-making officials *after the officials have notice of the conduct*; and (3) a resulting injury on the part of the plaintiff."  ECF No. 48 at 7.  KSD cites to *K.C. v. Mayo*, 983 F.3d 365 (8th Cir. 2020) for the same contention.  KSD argues that Plaintiff's subpoena is overbroad because it seeks all of Encompass' investigatory materials, including information related to allegations against other KSD staff, and is not limited to information related directly to allegations of sexual abuse against Mr. Collier.

Defendants make a similar argument regarding Title IX claims.  KSD again quotes *P.H.* for support: "a school district must have had actual notice of a teacher's sexual harassment of a student and the school district must have made an *official decision not to remedy the violation* in order for liability to attach to the school district."  *Id.* at 8 (citing *P.H.*, 265 F.3d at 661).  KSD cites to *KD v. Douglas Cnty. Sch. Dist. No. 001*, 1 F.4th 591 (8th Cir.) and *Doe v. Francis Howell Sch. Dist.*, 4:17-CV-1301-JAR, 2017 WL 5629616 (E.D. Mo. Nov. 22, 2017) as additional support for its contention that Title IX claims like those raised by Plaintiff require showing that KSD had actual notice of Mr. Collier's specific conduct.

KSD also makes a generalized argument that Plaintiff's subpoena seeking all of Encompass' investigation materials is disproportionate to the needs of the case because her allegations relate only to the 1980–81 school year, and therefore any information in the Report or Encompass' materials relating to later allegations against KSD staff are irrelevant to Plaintiff's claims.

In her Response, Plaintiff asserts that the subpoena seeks relevant information because she is alleging a constitutional violation under § 1983 based on a government entity's "usage or custom."  ECF No. 50 at 13 (citing *Poehl v. Randolph*, No. 4:05CV00400, 2006 WL 1236838, at *6 (E.D. Mo. May 3, 2006)).  She argues that § 1983 "custom" claims allow a plaintiff to allege facts that establish "the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees."  *Poehl*, 2006 WL 1236838 at *6 (internal quotations marks and citation omitted).

Plaintiff makes a similar argument that to succeed on her Title IX claim, she must establish that KSD had "actual knowledge" or "actual notice" that sexual abuse was occurring within KSD schools.  Plaintiff asserts that, to carry the burden of showing KSD's actual knowledge or actual notice, she must show either that KSD had "prior knowledge of (1) harassment previously committed by the same perpetrator and/or (2) *previous reports of sexual harassment occurring on the same premises* or actual knowledge that an assailant poses a substantial risk of sufficiently severe harm to students based on the assailant's previous known conduct."  ECF No. 50 at 14 (citing *Roohbakhsh v. Bd. of Trs. of Neb. State Colleges*, 409 F. Supp. 3d 719, 733 (D. Neb.

13

2019)).  Plaintiff cites to *Doe v. Bd. of Trs. of Neb. State Colleges*, No. 8:17CV265, 2020 WL 606426 (D. Neb. Feb. 7, 2020) as additional support.  KSD notes that both cases relate to claims of peer harassment, and on that basis do not provide the appropriate standard applicable in this case where Plaintiff alleges sexual misconduct by a KSD staff member and not a peer.

The Court finds that Plaintiff has made a prima facie showing that some—but not all—of the materials it seeks via the subpoena to Encompass are relevant to her § 1983 claim.  Specifically, Plaintiff has alleged that KSD had a custom of permitting sexual abuse and harassment by KSD employees against students.  Claims under § 1983 can be brought against local governmental entities when the claims implicate "constitutional violations due to governmental 'custom,' even if such custom 'has not received formal approval through the body's official decisionmaking channels.'"  *Poehl*, 2006 WL 1236838, at *6 (quoting *Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658, 690 (1978)); *see also Kuha v. Minnetoka*, 365 F.3d 590, 604 (8th Cir. 2003) ("A plaintiff may establish municipal liability under § 1983 by proving that his or her constitutional rights were violated by . . . misconduct so pervasive among non-policymaking employees of the municipality as to constitute a custom or usage with the force of law.") (cleaned up).  In the context of § 1983 claims of sexual assault brought against a school district under the "custom" theory, the Eighth Circuit requires plaintiffs to prove three elements:

1)  The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;

2)  Deliberate indifference to or tacit authorization of such conduct by

14

the governmental entity's policymaking officials after notice to the officials of that misconduct; and

3)     That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was the moving force behind the constitutional violation.

*Larson by Larson v. Miller*, 76 F.3d 1446, 1453 (8th Cir. 1996) (citing *Jane Doe A By and Through Jane Doe B v. Special Sch. Dist.*, 901 F.2d 642, 646 (8th Cir. 1990)).

Here, Plaintiff has raised a § 1983 claim against KSD alleging, in part, that "[f]rom approximately the 1970s to 2020, [KSD] had a . . . custom of permitting employees to abuse students."  ECF No. 42 at ¶ 32.  Therefore, any information requested in the subpoena relating to allegations of sexual abuse by KSD staff against students that purportedly occurred prior to Plaintiff's alleged sexual abuse is relevant to Plaintiff's § 1983 claim and is therefore discoverable.  The Court, however, will specifically limit the production of the subpoenaed materials to (1) information dealing with allegations against Mr. Collier; and (2) information related to allegations of abuse that occurred during or before the 1980–81 school year.  Information relating specifically to allegations of abuse by KSD staff that allegedly took place after Plaintiff's alleged abuse are not sufficiently relevant to Plaintiff's claims to be discoverable.

B.     The Attorney-Client Privilege and Work Product Doctrine

After carefully reviewing the arguments, case law, and evidence, the Court finds that the attorney-client privilege does not apply to the materials requested in the subpoena because Encompass' investigation was not conducted in its role as attorney.  Central to the Court's analysis is the absence of any evidence of a retention agreement between

KSD and Encompass that could indicate that KSD was seeking legal advice from Encompass.  Because the burden to establish the privilege is on KSD and the only evidence supporting their position is the Ulrich Affidavit, which is contradicted by Dr. Ulrich's earlier deposition testimony, the Court finds that KSD has not established the applicability of the privilege.

KSD argues that the Court should follow the outcome of *Sandra T.E. v. South Berwen Sch. Dist. 100*, 600 F.3d 612 (7th Cir. 2009).  There, the Seventh Circuit found that the attorney-client privilege applied to materials sought in discovery that were prepared by a law firm investigating allegations of sexual abuse by the defendant school district's employees.  But the facts in *Sandra T.E.* are distinguishable from the facts here. The Seventh Circuit's analysis focused on the terms of the engagement letter between Sidley Austin, the investigating law firm, and the school district.  The engagement letter specifically stated that Sidley was hired to "'investigate the response of the school administration to allegations of sexual abuse of students' *and* 'provide legal services in connection with the specific representation.'"  *Id.* at 619.  The court noted several other considerations that supported finding that the privilege applied: the attorneys provided "*Upjohn* warnings" to interviewees; Sidley's findings were presented to the school board in a closed executive session; the written executive summary presented to the school board was marked "Privileged and Confidential," "Attorney-Client Communication," and "Attorney Work Product"; and affidavits submitted by the attorney investigators and the school board president emphasized that Sidley was hired to provide legal advice related to the facts discovered in its investigation.  *Id.* at 620.

16

While KSD supports its motion with the Ulrich Affidavit, it has not presented its

engagement agreement with Encompass or affidavits from Encompass supporting KSD's

position.  Also, while the Report was presented in a closed session with the KSD school

board, Encompass' Report was eventually published.  There is no indication that

Attachment A, which remains unpublished, has been marked "Attorney-Client

Communication" or "Attorney Work Product."  And even if it were marked as such, that

designation does not necessarily transform Attachment A into a document protected by

the attorney-client privilege.  *See B.L. v. Schuhmann*, No. 3:18-CV-151, 2020 WL

6293582, at *4 (W.D. Ky. Oct. 27, 2020).  There is also no indication that Encompass

provided "*Upjohn* warnings" to interviewees.  As such, the Court finds that KSD's

reliance on *Sandra T.E.* is misplaced.

Plaintiff argues that *B.L. v. Schuhmann* is more analogous to the dispute here.  The

Court agrees.  There, the district court found that the attorney-client privilege was not

applicable to the materials plaintiffs sought from the investigating law firm.  The

materials at issue in *Schuhmann* were prepared by Dickinson Wright LLC, the law firm

hired to investigate alleged abuse that occurred while plaintiffs participated in the

Louisville Metro Police Department's Explorer Program.  The defendant produced its

retention agreement with Dickinson Wright LLC, which stated that the firm was to "at all

times be treated as an *independent investigator*."  *Id.* at *2.  The retention agreement also

indicated that the firm agreed to report any potential criminal activity it uncovered during

the investigation directly to the appropriate legal authorities.  *Id.*  The final report

produced by Dickinson Wright was labeled "confidential" and "attorney-client

17

privileged." *Id.* at *4.  The report even stated that Dickenson Wright was "acting as attorneys for [Defendant] . . ." *Id.*  Despite these facts, the district court in *Schuhmann* determined that Dickinson Wright had not been retained to provide legal advice.  *Id.* at *6.  The court's analysis focused the defendant's retention agreement with Dickinson.  The Court found that Dickinson had been retained to conduct the investigation but was not specifically tasked with providing the defendant with legal advice.  Rather, "[i]t called for an independent factual inquiry and assessment of the relevant policies and procedures in place at the time including whether those procedures were followed and any changes to them that could be made to prevent those events from happening in the future . . . ." *Id.* at *7.  The district court confidently concluded that "[t]his task is not legal advice." *Id.*

Like in *Schuhmann*, the evidence presented by KSD does not indicate that Encompass was retained to provide legal advice.  While the specific terms of an engagement letter are not determinative of whether the privilege applies, the Court believes that the engagement letter would at least be probative of the relationship between KSD and Encompass.  *See Schuhmann*, 2020 WL 6293582, at *6 ("boiler-plate reference to an attorney or legal service or the mere absence of the same do not suffice as indicators of the true nature of the relationship between [KSD and Encompass].").  But KSD has not provided its retention agreement with Encompass, nor has it argued that its agreement with Encompass includes provisions indicating that Encompass would provide legal services or advice.  There are no affidavits before the Court from Encompass or Ms. Molloy stating that Encompass believed themselves to be acting as KSD's attorneys or

that part of their mandate included providing KSD with legal advice.  Rather, the evidence available to the Court shows that Encompass specifically related to KSD that it would report any criminal activity it found during the investigation directly to the appropriate legal authorities.  This admission undermines KSD's assertion that Encompass was acting as its attorney for the purposes of the investigation.[2]

The only evidence supporting KSD's position is the Ulrich Affidavit.  But this evidence is contrary to Dr. Ulrich's previous deposition testimony where he agreed that being a law firm or an attorney was not a prerequisite for a firm the project.  Courts generally is not required to credit an affidavit if the information contained therein contradicts the affiant's previous deposition testimony.  *See Taylor v. Cottrell, Inc.*, 795 F.3d 813, 818 (8th Cir. 2015) ("We do not permit a post-deposition affidavit to contradict prior testimony in an attempt to create issues of fact.") (citations omitted).  Instead, Dr. Ulrich's deposition testimony conforms to the language of the RFP.  The RFP is clear that KSD's goal for the investigation was to gain a greater understanding of the culture and climate around sexual abuse within the district.  It makes no mention of legal services or legal advice.  Accordingly, the Court finds that KSD has failed to carry its burden to establish that the attorney-client privilege applies to the materials sought by the subpoena.

---

[2]     In its Reply, KSD cites to the *Schuhmann* case on this point and asserts that "[t]here is no such indication [that Encompass intended to report findings of criminal activity directly to the authorities] in this case—on the contrary, Encompass went about its investigation with the understanding that the details of its investigation would be kept confidential . . . ."  ECF No. 55 at 3.  KSD's argument contradicts the evidence before the Court, and KSD has provided no evidence to undermine Encompass' statements.

The Court also rejects KSD's position that Encompass prepared the investigatory materials in anticipation of litigation.  KSD initially argued that "it is self-evident that allegations of sexual misconduct against KSD employees are likely to lead to litigation against KSD . . . ."  ECF No. 48 at 14.  KSD provided no other supporting evidence.  In response, Plaintiff emphasized that materials prepared by attorneys are not always subject to the work product doctrine and are only protected when they are prepared *because of* anticipated litigation.  ECF No. 50 at 12 (citing *Schuhmann*, 2020 WL 6293582).  Plaintiff also argued that "[t]here was no pending or threatened litigation at the time [KSD] hired Encompass . . . to conduct its internal investigation."  *Id.*  In its Reply, KSD, for the first time, cited to emails from August 28, 2020, and October 15, 2020, from Plaintiff's attorney in which he stated he may initiate litigation on behalf of Plaintiff and another alleged victim.  ECF No. 55 at 4.  However, there is no indication that KSD hired Encompass *because of* anticipated litigation.  The proximity in time between KSD's retention of Encompass and the emails from Plaintiff's attorney indicating that litigation was imminent, without additional support, does not indicate that Encompass conducted its investigation specifically in anticipation of litigation.  Indeed, KSD issued its RFP and Encompass submitted its proposal and was interviewed before the first email threatening litigation against KSD.  As such, the Court finds that the materials sought by Plaintiff's subpoena are not protected by the work product doctrine.

C.     Third Party Privacy Interests

The Court has already entered a Protective Order in this case that protects "documents produced through third parties that pertain[] to the subject matter of this

action when such information is designated in accordance with the procedures set forth herein." ECF No. 28 at 1.  As such, KSD's arguments that the Court should quash the subpoena to protect the privacy interests of third parties have already been addressed and do not provide support for KSD's motion.  Under the Protective Order, KSD has the ability to designate any document produced by Encompass as confidential and therefore to bring it within the ambit of the Protective Order.  The Court therefore rejects KSD's arguments that the materials should be shielded from discovery because they may contain private information about KSD's employees and/or alleged victims.

**Conclusion**

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Kirkwood R-7 School District's

Motion to Quash (ECF No. 47) is **DENIED in part** and **GRANTED in part**.

Encompass Resolution, LLC is directed to produce materials subject to the subpoena that

(1) relate to Plaintiff's allegations of sexual abuse by Jack Collier, and (2) relate to

allegations of abuse by KSD staff against KSD students that occurred before or during

the 1980–81 school year.

**IT IS FURTHER ORDERED** that Defendant Kirkwood R-7 School District's

Motion to Strike (ECF No. 61) is **DENIED**.[3]

Dated this 15th day of December, 2023.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

---

[3]     KSD argues that the Sur-Reply filed by Plaintiff exceeded the scope of what was permitted by the Court.  But it is unnecessary to address the motion as the Court has not relied on any part of Plaintiff's Sur-Reply.